UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X     Civil Action No. 23-cv-489
JOHN ADAMO,

                              Plaintiff,                                **COMPLAINT**

          -against-                                                     **AND JURY DEMAND**


YONKERS CONTRACTING COMPANY, Inc.,

                              Defendant.

-----------------------------------------------------------------X


        Plaintiff, John Adamo, by and through his attorneys, Philip H. Seelig and Seelig Law

Offices, LLC, alleges against Yonkers Contracting Company, Inc., ("Yonkers Contracting") as

follows:

## NATURE OF THE CASE

1.        This action arises under the Family and Medical Leave Act of 1993 ("FMLA"),

the Families First Coronavirus Response Act ("FFCRA"), and the New York State Human

Rights Law.

## JURISDICTION

2.        This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331,

due to the federal questions presented in the FMLA and FFCRA. Supplemental jurisdiction over

the Human Rights Law claims is conferred by 28 U.S.C. § 1367 because the claims are related

and form part of the same case or controversy.

3.        Venue is proper in this District, pursuant to 28 U.S.C. § 1391 because the

unlawful employment practices are alleged to have been committed in Westchester County, New

York, which is in the Southern District of New York.

## PARTIES

4.      Plaintiff, John Adamo, resides in Bayville, New Jersey.

5.      Plaintiff was an employee of Defendant, with a physical work location in the County of Westchester, New York.

6.      Plaintiff qualified as an "employee" under all applicable statutes.

7.      Defendant Yonkers Contracting Company, Inc. is a domestic business corporation incorporated in the State of New York (DOS ID # 547422).

8.      Defendant Yonkers Contracting is a construction company with a principal place of business at 969 Midland Avenue, Yonkers, New York, 10704.

9.      Upon information and belief, Defendant qualifies as an "employer," as defined by all applicable statutes, including 42 U.S.C. 2000e(b), since it is engaged in an industry affecting commerce, and the FMLA, since it had more than fifty (50) employees for each workweek in each of twenty (20) or more calendar weeks in the current or preceding year.

## STATEMENT OF CLAIMS

10.      Plaintiff was employed by Defendant Yonkers Contracting as a Safety Manager.

11.      On January 27, 2021, Defendant terminated Plaintiff based upon false allegations.

12.      Plaintiff has always performed his job in a satisfactory manner, and was qualified for his position at all relevant times.

13.      Beginning in August 2019, Mr. Adamo requested and was approved for leave under the Family and Medical Leave Act (FMLA) because of intermittent assistance that his wife required due to flare-ups of her documented illnesses.

14.      On September 24, 2019, Plaintiff Adamo provided a written certification to Defendant of the need for FMLA leave on U.S. Department of Labor Form WH-380-F writing

that: "My wife will be needing assistance when the diagnosis flares-up putting my wife at risk with inbalance, no strength, and loss of sensation that could cause her to hurt herself in and or around the house, [i.e.] stairs, driving, bathing, and normal daily routine."

15.     By form dated August 22, 2019, Defendant, through Ms. Friedberg, a representative of Defendant, provided Plaintiff with a Notice of Eligibility form, checking the box which stated that Plaintiff is "eligible for FMLA leave."

16.     Mr. Adamo only very sporadically needed an FMLA absence to care for his wife, but he suffered harassment in the workplace since requesting and using it.

17.     Plaintiff used his FMLA leave on a handful of different days as needed to care for his wife.

18.     An extremely hostile work environment had been created by the owner Greg Petrillo regarding FMLA leave and many other employees at the company are aware of it.

19.     The workplace is full of constant verbal abuse and degrading outbursts, especially when employees attempt to take time off.

20.     For example, on December 27, 2019, Plaintiff Adamo used his FMLA leave due to his wife's unexpected flare-up of her symptoms.

21.     Defendant made it very difficult to take FMLA leave or any type of vacation leave due to the intimidation and harassment.

22.     Any time Plaintiff tried to take leave he was criticized for not providing enough advance notice.

23.     Plaintiff received pushback from Defendant by email copied to the owner Greg Petrillo that intermittent FMLA is not intended to be used unplanned and that this is the second day that you have declared as FMLA without prior notice.

24.      In or about September 2021, Plaintiff complained about Mr. Petrillo's conduct regarding leave and called a meeting with HR which was held.

25.      The meeting did not help and things only worsened.

26.      On or about January 21, 2021, Plaintiff Adamo was provided notice that he would be disciplined under an objectively false set of facts that was merely a pretext for discrimination and retaliation.

27.      On or about that day, when Mr. Adamo learned that another employee tested positive for Covid, he _immediately_ informed his supervisor and went to get tested, even though no one even asked him to do so.

28.      Plaintiff took it upon himself to look out for the well-being of his co-workers, and his wife who he occasionally takes FMLA leave to care for. It is essential to note that other employees that were exposed did not get tested.

29.      The discipline Plaintiff received for allegedly not following Covid protocols was termination.

30.      The notion that Mr. Adamo was fired for a failing to follow safety-related protocols and putting other employees at risk is absurd since Mr. Adamo went above and beyond any requirements and Mr. Adamo's termination was never actually about safety.

31.      None of the other members of management that were in close contact with the employee(s) who tested positive even got tested, nor were they asked to get tested.

32.      None of the other employees or members of management were disciplined or terminated.

33.      None of the other employees that spread Covid or exposed others were disciplined or terminated.

34.     Plaintiff never had Covid-19 during his employment with Defendant.

35.     Thus, it is impossible for him to have put other employees at risk.

36.     There is no legitimate basis for this termination except that Mr. Petrillo had a personal vendetta against Mr. Adamo due to his FMLA leave or was perceived to have Covid.

37.     At no time did Mr. Adamo put anyone in the company at risk, and at no time did any of his actions violate protocol.

38.     If anything, Mr. Adamo gave too much information to his supervisors who really were not very interested in his negative Covid results and allergies; the situation only escalated when Mr. Petrillo saw this as an opportunity to manufacture a termination.

39.     On January 27, 2021, Mr. Adamo was terminated.

40.     Even if Defendant could terminate Plaintiff for no reason, Defendant's stated legitimate reason for termination that Plaintiff put other employees at risk and did not follow procedures is false and rebutted and therefore Plaintiff will also survive any motion for summary judgment under the McDonnell Douglas standard.

41.     Defendant's proffered reason for terminating Plaintiff is so implausible and fake that a reasonable jury is especially likely to conclude that it is pretextual reason.

42.     As a proximate result of the Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

43.     After being terminated, Plaintiff continued to seek employment but was unemployed until late 2022.

44.     Plaintiff has been regarded as disabled when Defendant believed he had Covid,

and fired him for allegedly exposing the other employees to Covid.

45.     Plaintiff may seek to amend this action to include Americans with Disabilities Act cause(s) of action upon receiving a right to sue letter from the Equal Employment Opportunity Commission.

## FIRST CAUSE OF ACTION
### (FMLA Interference)

46.     Plaintiff repeats and realleges each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

47.     Plaintiff informed Defendant that he qualified for FMLA leave to care for his wife who has flare-ups of documented illnesses.

48.     Plaintiff suffered harassment in the workplace due to his taking FMLA leave.

49.     Plaintiff was ultimately terminated for a pretextual reason due to the hostility over the FMLA leave.

50.     Defendant interfered with his FMLA rights by terminating him in close proximity to his use of FMLA time, while experiencing harassment for taking time off.

51.     By interfering with Plaintiff's request for intermittent leave, pursuant to 29 U.S.C. § 2612 and 29 § C.F.R. 825.203, Defendant has violated the FMLA.

52.     As a direct result of the above-complained violative conduct by Defendant and its employees, Plaintiff sustained emotional and psychological distress, and was caused to incur pecuniary and non-pecuniary losses, liquidated damages, lost wages, past and future, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
### (FMLA Retaliation)

53.     Plaintiff repeats and realleges each allegation contained in all other paragraphs of

this Complaint as though fully set forth herein.

54.     Plaintiff suffered harassment in the workplace due to his taking FMLA leave.

55.     Plaintiff was ultimately terminated for a pretextual reason due to the hostility over the FMLA leave.

56.     Defendant retaliated against Plaintiff by terminating him in close proximity to using FMLA leave and harassing him for taking time off.

57.     By retaliating against Plaintiff after he requested FMLA leave, Defendant has violated the FMLA.

58.     As a direct result of the above-complained violative conduct by Defendant and its employees, Plaintiff sustained emotional and psychological distress, and was caused to incur pecuniary and non-pecuniary losses, liquidated damages, lost wages, past and future, attorney's fees, and costs.

59.     Defendant's violations of Plaintiff's rights were willful and intentional.

### THIRD CAUSE OF ACTION
### (FFCRA)

60.     Plaintiff repeats and realleges each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

61.     Plaintiff was eligible for sick leave and/or paid leave under the FFCRA.

62.     Defendant terminated Plaintiff because of Defendant's belief that Plaintiff had Covid-19 and exposed other employees to it despite the fact that Plaintiff went above and beyond to get Covid tested even when he was not required to.

63.     Defendant did not offer Plaintiff sick leave and/or paid leave when Defendant believed Plaintiff had Covid.

64.     Plaintiff was terminated as a result of his protected activity.

65.     Defendant unlawfully retaliated and otherwise discriminated against Plaintiff because of conduct protected by the FFCRA.

66.     Defendant did not have reasonable grounds for believing it did not violate the FFCRA.

67.     Defendant's conduct was willful and intended to deprive Plaintiff of rights under the FFCRA.

68.     Defendant illegally terminated Plaintiff in violation of the FFCRA.

69.     There is a causal link between the adverse actions and the employment actions herein, including the termination of Plaintiff.

70.     Plaintiff sustained damages as a result of Defendant's conduct.

71.     Defendant Eastern Airlines is liable for liquidated damages.

**FOURTH CAUSE OF ACTION**
**(Failure to Provide a Reasonable Accommodation – State HRL)**

72.     Plaintiff repeats and realleges each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

73.     Plaintiff was treated differently and less well than similarly-situated employees without a disability or perceived disability.

74.     Plaintiff was regarded as disabled with Covid, and terminated.

75.     Defendant failed to adequately engage in the interactive reasonable accommodation process regarding Plaintiff's impairment(s).

76.     Defendant failed to offer or provide Plaintiff with a reasonable accommodation when Defendant believed he had Covid and allegedly exposed the other employees, violating New York State Executive Law § 296(3) and New York City Administrative Code § 8-107(15).

77.     By the actions described throughout this Complaint, among others, Plaintiff

asserts that Defendant has discriminated against Plaintiff on the basis of his disability or perceived disability in violation of the New York State Human Rights Law (New York State Executive Law § 296).

78.     Plaintiff exhausted all conditions precedent to the filing of this Complaint.

79.     As a result of Defendants' conduct, Plaintiff suffered compensatory damages, including, but not limited to, backpay, front pay, attorney's fees and court costs, for which he is entitled to an award of monetary damages and other such further and proper relief.

### FIFTH CAUSE OF ACTION
**(Discriminatory Termination – State HRL)**

80.     Mr. Adamo repeats and realleges all paragraphs above as though fully set forth herein.

81.     Mr. Adamo' s alleged physical impairment of Covid as described in this Complaint constitutes a disability or perceived disability within the meaning of Human Rights Law. N.Y. Exec. L. § 292(21).

82.     Defendants intentionally and willfully violated Human Rights Law when it terminated Mr. Adamo's employment because of a perceived disability. N.Y. Exec. L. § 296.

83.     As a proximate result of Defendants' unlawful acts of discrimination, Mr. Adamo has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

84.     As a proximate result of Defendants' unlawful acts of discrimination, Mr. Adamo has suffered and continues to suffer substantial losses incurred in loss of past and future earnings and other fringe benefits.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

A.  Order an award of compensatory damages, including lost back pay and fringe benefits with prejudgment interest, past and future lost wages and benefits, past and future pecuniary losses and compensatory damages,

B.  Damages for emotional distress and mental anguish;

C.  Liquidated damages;

D.  Punitive damages;

E.  Reasonable attorney's fees, and costs; and

F.  Such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues properly before this Court and all questions of fact raised by this Complaint.

Dated:  New York, New York
       January 19, 2023

Respectfully,
Seelig Law Offices, LLC
By:

    /s/ *Philip H. Seelig*
Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600
*Attorneys for Plaintiff*
